IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ROBERT D. PARTAIN, # 237856, | ) Civil Action No. 3:09-2415-MBS-JRM |
| Plaintiff, | ) |
| vs. | ) |
| CHARLES A. REESE, SIMPSONVILLE CHIEF POLICE; | ) |
| COLLEEN O'NEAL, ASS. CHIEF OF POLICE; | ) **REPORT AND RECOMMENDATION** |
| ERNEST BYRD, SGT. SIMPSONVILLE POLICE; | ) |
| JAMES DONNELLY, INV.; SIMPSONVILLE POLICE; | ) |
| MATTHEW CULBERTSON, SIMPSONVILLE POLICE; | ) |
| KYLE JUREK, SIMPSONVILLE POLICE, | ) |
| Defendants, | ) |

Plaintiff filed this action on September 14, 2009.[1] He filed a motion for summary judgment on November 3, 2009. Defendants, all employees of the City of Simpsonville Police Department, are Chief Charles Reece ("Reece"), Assistant Chief Colleen O'Neil ("O'Neil"),[2] Sergeant Ernest Byrd ("Byrd"), Investigator James Donnelly ("Donnelly'), Corporal Matthew Culbertson ("Culbertson"), and Patrolman Kyle Jurek ("Jurek"). On January 12, 2010, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on January 12, 2010, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment could result in the dismissal of his complaint. On

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because these are dispositive motions, this report and recommendation is entered for review by the court.

[2]The correct spelling of this Defendant's last name is O'Neil. See O'Neil Aff.

February 11, 2010, Plaintiff filed what appears to be a response in opposition to Defendants' motion for summary judgment as well as his second motion for summary judgment.

**DISCUSSION**

Plaintiff alleges that on September 15, 2008, Stephanie Lynn "Brandy" Faulkner ("Faulkner") took a car belonging to his girlfriend Lisa Fant ("Fant") and did not return it. In the past, Fant had allowed Faulkner to use the car for a fee and Faulkner had a spare set of keys to the vehicle. Fant, however, did not want Faulkner to use the vehicle at the time in question. Plaintiff placed a "911" call to the Simpsonville police. Defendants Culbertson and Parker located the vehicle and Fant was able to retrieve her car. Plaintiff alleges that these Defendants should have arrested Faulkner, but failed to do so.

Defendants provide that on September 16, 2008, they received a report of a burglary at the residence of Charles "Shorty" Dewey Jordan ("Jordan"). Byrd Aff., Para. 7; Donnelly Aff., Para. 6. Jordan told Donnelly that he was at home on September 16, 2008, when Paul Pinson ("Pinson") and another white male knocked on his door. Pinson and the other individual asked Jordan if they could have some money to purchase medication for Plaintiff's girlfriend. Jordan told them he did not have any money for them and closed the door. Jordan saw a grey four-door compact car in his driveway. Donnelly thought it matched Fant's vehicle and directed an officer to take a digital photograph of the Fant vehicle. Jordan reviewed the photo and identified it as the car that was at his residence earlier. Jordan reportedly fell asleep on the couch after the men left and awoke later when a blanket was placed over his face and his wallet was taken. Jordan provided a written statement. Donnelly Aff., Paras. 8-10.

2

Plaintiff states that the Simpsonville police came to his door on September 16, 2008, but he did not open the door as he was upset about the incident the day before. Donnelly states that he located Pinson who provided a statement. In the statement, Pinson reported that he and Plaintiff asked Jordan for money, Jordan refused to give them money, he and Plaintiff later returned to Jordan's house, Plaintiff went inside, Plaintiff returned with a wallet, Plaintiff took money from the wallet, and Plaintiff went to buy crack cocaine. Donnelly states that based on the information from Pinson as well as the victim's (Jordan) statement, he believed probable cause existed to charge Plaintiff with first degree burglary as well as strong armed robbery. He completed two warrant applications as well as an application for a search warrant. Municipal Judge Sharff reviewed and signed the two arrest warrants and a search warrant. Donnelly Aff., Paras. 15-16, Defendants' Ex. A.[3] On September 17, 2009, investigator Donnelly returned to Plaintiff's apartment with the arrest warrants and the search warrant. Plaintiff claims that the arrest warrant was not supported by probable cause because it was based on Pinson's statement and Pinson had been smoking crack cocaine. Plaintiff claims that Officer Jurek said he was being arrested because he did not answer his door, such that the police assumed Plaintiff had committed the crime.

After appearing in court, Plaintiff was detained at the Greenville County Detention Center. He was held there for approximately one year before his charges were nolle prossed by the Greenville County Solicitor's Office (after the alleged victim died). See Donnelly Aff., Para. 23. Plaintiff requests monetary damages and injunctive relief.

---

[3]References to "Defendants' Ex. ___" are to exhibits to Defendants' motion for summary judgment.

Plaintiff appears to argue that he is entitled to summary judgment because his arrest was not supported by probable cause. Defendants contend that their motion for summary judgment should be granted because: (1) there is no constitutional right to direct the implementation or prosecution of a criminal charge; (2) there is no cognizable constitutional duty to protect; (3) there is no evidence of a due process violation; (4) there was ample probable cause for Plaintiff's arrest; (5) Plaintiff fails to show a basis for supervisory liability; (6) Defendants are entitled to qualified immunity; and (7) this action is frivolous and Plaintiff should be sanctioned pursuant to Rule 11 and 28 U.S.C. § 1927.[4]

### 1. September 15, 2008 Incident

Defendants contend that Plaintiff's claims concerning the incident of September 15, 2008 must be dismissed as a matter of law because there is no constitutional right to direct the implementation of prosecution of a criminal charge.[5] They also argue that Plaintiff, who was not a registered owner of the vehicle in question, lacks standing to bring a claim on behalf of the car's owner.

Plaintiff fails to show that he has a constitutional right to direct the prosecution of Faulkner concerning the alleged taking of a vehicle. No citizen has an enforceable right to institute a criminal

---

[4]Section 1927 ("Counsel's liability for excessive costs") provides:
**Any attorney or other person admitted to conduct cases** in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
28 U.S.C. § 1927 (emphasis added). There is no indication that this section is applicable to a pro se plaintiff.

[5]Defendant Culbertson states that based on the information available, it appeared to be a civil dispute and there did not appear to be probable cause for an arrest concerning the car. He completed an incident report and advised Fant that she could seek a warrant from the municipal court. Culbertson Aff., Paras. 8-9.

4

prosecution. Linda R. S. v. Richard V., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); see also Lopez v. Robinson, 914 F.2d 486 (4th Cir. 1990) (prison officials entitled to qualified immunity for their actions in screening inmate requests that they be transported to court to press criminal charges).

Plaintiff also lacks standing as to this claim. Defendants provide that the vehicle is registered to Fant (which Plaintiff has not disputed). See Defendants' Ex. F. Fant is not a party to this action. Plaintiff cannot assert a claim on behalf of others. See Laird v. Tatum, 408 U.S. 1 (1972). See also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, 454 U.S. 464, 482 (1982); Flast v. Cohen, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); and Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981 )(a prisoner cannot act as a "knight-errant" for others). Cf. Oxendine v. Williams, 509 F.2d 1405, 1407 & n. *(4th Cir. 1975)(a pro se prisoner cannot be an advocate for others in a class action); and McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

### 2. **Due Process**

Plaintiff appears to allege that his due process rights were violated by his arrest and detention. Defendants contend that there is no evidence of a due process violation because the reported crimes were investigated by the police department, resulting in an application for a warrant, Judge Sharff found sufficient probable cause to issue the arrest warrants as well as a search warrant, Plaintiff was arraigned and transported to the detention center for confinement pending bond or trial, and Plaintiff

was subsequently indicted by the Greenville County Grand Jury. They argue that there was ample probable cause for Plaintiff's arrest.

To establish a deprivation of his constitutional rights, Plaintiff must show a lack of probable cause for his arrest, imprisonment,[6] and prosecution. "Only where ... [a] warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335 (1986). In Anderson v. Creighton, 483 U.S. 635 (1987), the Supreme Court set forth the underlying rationale for this favorable standard, observing that "[i]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... like other officials who act in ways they reasonably believe to be lawful[,] [they] should not be held personally liable." Id. at 641.

Probable cause will be found to exist when "the facts and circumstances within an officer's knowledge--or of which he possesses reasonably trustworthy information--are sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000)(citing Brinegar v. U.S., 338 U.S. 160, 175-76 (1949)). While probable cause demands "more than a mere suspicion, ... evidence sufficient to convict is not required." Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996) (citing Wong Sun v. United States, 371 U.S. 471, 479 (1963)). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." Torchinsky v. Siwinsky, 942 F.2d

---

[6]Section 1983 actions premised on alleged false arrest and/or false imprisonment claims are analyzed as unreasonable seizures under the Fourth Amendment. See, e.g., Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002)(recognizing that a plaintiff alleging a § 1983 false arrest claim needs to show that the officer decided to arrest him without probable cause to establish an unreasonable seizure under the Fourth Amendment); Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001)(claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment").

257, 264 (4th Cir. 1991)(citation omitted). The Fourth Circuit has held "that a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir.1998).

Plaintiff fails to show that his constitutional rights were violated because he has not shown that Defendants lacked probable cause to arrest, detain, and prosecute him. He was arrested pursuant to facially valid warrants. The facts and circumstances within Defendants' knowledge were sufficient to convince a person of reasonable caution that the offenses had been committed. Defendants Donnelly and Byrd state that Jordan advised them that his wallet was stolen while he was sleeping on the couch and that prior to going to sleep Plaintiff and Paul Pinson knocked on his door and asked for money. Jordan stated he was familiar with Pinson and described the car being used by Pinson and Plaintiff. The car described by Jordan matched the description of the Fant vehicle previously located by Defendant Culberson on September 15, 2008. See Byrd Aff., Paras. 9-11; Culberson Aff., Para. 10; Donnelly Aff., Paras. 8-10; Defendants' Ex. E (Jordan Statement).[7] Donnelly located Pinson who said that he and Plaintiff returned to Jordan's house after Jordan refused their request for money, Plaintiff went into Jordan's residence and came out with a wallet, and Plaintiff took money from the wallet to buy cocaine. Donnelly Aff., Paras. 11-12. Pinson provided a written statement to Donnelly implicating himself in the crime as well as Plaintiff. Jurek Aff., Para. 10, Defendants' Ex. G.[8]

---

[7] Jordan stated that after he refused the request for money, the two men walked back to the car. Afterwards, the unidentified male got into the car, got back out again, walked towards the house, stopped, and left again. Defendants' Ex. E.

[8] Donnelly completed a warrant affidavit as to Pinson for the offense of Accessory/Accessory After the Fact, Judge Sharff issued an arrest warrant, and Pinson was arrested. See Defendants' Ex.
(continued...)

7

Additionally, [w]here the Grand Jury has returned a bill upon the charge made, such finding amounts to a judicial recognition that probable cause does exist and infers prima facie probable cause for the prosecution. White v. Coleman, 277 F.Supp. 292, 297 (D.S.C.1967) (citation omitted). On March 17, 2009, the Greenville County Grand Jury returned a true bill, indicting Plaintiff on the charge of Burglary First Degree. Defendants' Ex. D.

Courts have recognized that the return of a true bill does not foreclose a plaintiff from pursuing a claim under the Fourth Amendment where there is evidence that the grand jury's deliberations were tainted by the actions of the defendant. See e.g., Shields v. Twiss, 389 F.3d 142 (5th Cir. 2004), Cook v. McPherson, 273 Fed. Appx. 421 (6th Cir. 2008). To successfully discredit an affidavit, a plaintiff must show that the officer deliberately, or with reckless disregard for the truth, made material false statements in his affidavit. See Franks v. Delaware, 438 U.S. 154 (1978) (search warrant); Unus v. Kane, 565 F.3d 103 (4th Cir. 2009) (search warrant); Miller v. Prince George's County, Md., 475 F.3d 621, 627 (4th Cir. 2007)(malicious prosecution). Reckless disregard may be established through evidence showing an officer acted with a high degree of awareness of the statement's probable falsity. Id. ("when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported").

Plaintiff fails to show that the grand jury's deliberations were tainted by Defendants' actions or that Defendant Donnelly deliberately or with reckless disregard for the truth made material false statements in his affidavit. He appears to argue that Defendants' lacked probable cause to arrest him

---

[8](...continued)
E. (Pinson Arrest Warrant and Booking Report).

because Pinson was high on crack cocaine at the time he gave his statement and Pinson later changed his statement. Donnelly, however, states that he did not detect any odor of alcohol or illicit drugs on Pinson's person, Pinson was not acting unusual, and Pinson did not appear to be under the influence of any drugs or alcohol. Donnelly Aff., Para. 13. Jurek states that Pinson's behavior did not appear abnormal at the time he was speaking with him in regard to the incident and he did not appear to be under the influence of any drugs or alcohol. Jurek Aff., Para. 11. Culbertson states that Pinson did not appear to be under the influence of any drugs or alcohol and that his responses to questions were normal and appropriate with nothing to indicate that he was in any way mentally incapacitated. Culbertson Aff., Para. 18. In his incident report, Donnelly wrote that when he went to check the apartment where Pinson was found, he observed a room filled with smoke that smelled like someone had been smoking crack cocaine. He asked Jeffrey Woodruff (the resident of the apartment) and Faulkner if someone had been smoking crack cocaine and Woodruff admitted having smoked some earlier. Donnelly found no narcotics in the apartment. Defendants' Ex. E.

Donnelly states that after Plaintiff's arrest, he interviewed Pinson who reaffirmed his prior statement. Later, Pinson admitted to the Assistant Solicitor that he also went into the residence during the burglary and helped Plaintiff steal the wallet by throwing the blanket over Jordan's head. Donnelly Aff., Para. 22. There is no indication, however, that Donnelly knew this at the time he applied for the arrest and or search warrants. Further, although Pinson's statement further implicates himself, Plaintiff is still implicated as to the charged crimes.

### 3. **Supervisory Liability**

Defendants Reece and O'Neil contend that they had no personal involvement in the alleged incidents and cannot be held liable on a theory of supervisory liability. The doctrine of respondeat

superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Reece or O'Neil were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of the City of Simpsonville Police Department employees. Thus, Plaintiff fails to show that Defendants Reece or O'Neil is liable on a theory of respondeat superior or supervisory liability.

### 4. **Immunity**

Defendants contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 35) be granted. It is also recommended that Plaintiff's motions for summary judgment (Docs. 12 and 37) be denied.

Joseph R. McCrorey
United States Magistrate Judge

July 12_, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).